Samuel Jarred **BARLETTA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 06–98–00052–CR.

Court of Appeals of Texas, Texarkana.

Argued March 24, 1999.

Decided April 8, 1999.

Clifton L. Holmes, Holmes Law Office, Longview, for appellant.

Tim Cone, Dist. Atty., Gilmer, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Samuel Barletta appeals from his conviction for intoxication manslaughter. He contends, based upon statutory and constitutional grounds, that the trial court erred at the punishment phase of his trial by allowing the State to introduce evidence showing the fact of his prior adjudication as a juvenile for the offense of manslaughter by use of an automobile. He also contends that the court erred in admitting the details of that prior offense and by admitting victim impact testimony related to it. We overrule these contentions and affirm the judgment of conviction.

The evidence shows that, after working a late-night shift at his job, and after spending some time in a local bar, in the pre-dawn hours of June 18, 1997, Barletta drove his pickup truck into a lane of oncoming traffic and hit a car occupied by two adults and two children. The driver of the other vehicle and her four-year-old son

were killed on impact, and the other adult was severely injured. The other child was also injured. The State proved that Barletta's blood alcohol content was 0.11 percent. A jury found Barletta guilty and assessed his punishment at imprisonment for seventeen years.

Barletta has not challenged the conviction. He contends that two types of errors occurred during the punishment phase of his trial, either of which justifies returning the case for a new punishment hearing. He first contends that evidence about a prior vehicular homicide in which he was the driver, that occurred while he was a juvenile, should not have been presented to the jury.

This type of evidence is explicitly permitted under TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.1999), which provides that at punishment:

> evidence may be offered by the state and the defendant of an adjudication of delinquency based on a violation by the defendant of a penal law of the grade of:
>
> (1) a felony; or
>
> (2) a misdemeanor punishable by confinement in jail.

Barletta acknowledges that the statute now provides for the admission of the evidence, but argues that the introduction of any such evidence in his case should have been allowed only if it were permissible under the statute as it existed at the time of the adjudication of delinquency. At the time he was adjudicated delinquent, the statute provided that such evidence was admissible only if the adjudication occurred less than five years before the commission of the offense for which the defendant was being tried and the defendant had during that five-year period not otherwise engaged in conduct for which he had been adjudicated as a delinquent. The present prosecution is for an offense committed over five years after the date of the juvenile adjudication.[1]

Barletta contends that the prior version of the Code should apply because application of the current statute violates the ex post facto and due process provisions of the law and because he had been warned, as required by statute, of the consequences of his plea—one of which was the potential use of the delinquency adjudication. He contends that to apply the changed statute to his case would result in the application of an ex post facto law and would therefore be improper.

▇ The ex post facto clause condemns the imposition of punishment retroactively. An ex post facto law (1) punishes as a crime an act previously committed which was innocent when done, (2) changes the punishment and inflicts a greater punishment than the law attached to a criminal offense when committed, or (3) deprives a person charged with a crime of any defense available at the time the act was committed. *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); *Ex parte Hallmark,* 883 S.W.2d 672, 674 (Tex.Crim.App.1994). Both the United States and the Texas Constitutions contain an absolute prohibition against ex post facto laws. U.S. CONST. art. I, § 10; TEX. CONST. art. I, § 16. It is not an individual right—rather, it is a "categorical prohibition directed by the people to their government." It cannot be waived. *Ieppert v. State,* 908 S.W.2d 217, 220 (Tex. Crim.App.1995).

▇ Laws which do not amend substantive law by defining criminal acts or providing for penalties are procedural in nature. *Ex parte Johnson,* 697 S.W.2d 605, 607 (Tex.Crim.App.1985); *Ex parte Allen,* 699 S.W.2d 886, 895 (Tex.App.Dallas 1985, pet. ref'd) (opinion on reh'g). Remedial or procedural laws are not usually within the ex post facto prohibition. *Ex parte Allen,* 699 S.W.2d at 895. A procedural statute is not ex post facto merely because it works to a defendant's disadvantage. *Dobbert v. Florida,* 432 U.S. 282,

---

1. The five-year limitation does not exist in the present version of the statute.

293, 97 S.Ct. 2290, 53 L.Ed.2d 344, 356 (1977). However, if a procedural change is retroactive and results in a deprivation of a substantive protection, it is unconstitutional. *Ex parte Abahosh*, 561 S.W.2d 202, 203 (Tex.Crim.App. [Panel Op.] 1978); *Goodlow v. State*, 766 S.W.2d 352, 354 (Tex.App.Texarkana 1989, pet. ref'd); *Ex parte Allen*, 699 S.W.2d at 895.

■ In the present case, the changed statute does not directly affect the punishment assessed against the defendant. Counsel contends that because the Family Code requires the defendant to be admonished about the fact that a juvenile conviction may be used in a subsequent prosecution,[2] then Barletta's plea in the juvenile proceeding was based in part upon the information that the juvenile proceeding could not be used in a later proceeding. Therefore, he argues, the later use of the adjudication constitutes punishment and is constitutionally improper.

■ We reject this argument for several reasons. At any juvenile adjudication hearing, the Family Code requires the court, at the beginning of such hearing, to "explain" to the child and his parent, among other things, the nature and possible consequences of the proceedings, including the law relating to the admissibility of the record of a juvenile court adjudication in a later criminal proceeding. TEX. FAM.CODE ANN. § 54.03 (Vernon 1996 & Supp.1999). It is apparent this provision merely requires an **explanation** by the juvenile court judge of "the proceedings" being conducted and their consequences. It is not primarily concerned with punishment. As a part of this explanation, the provision requires the juvenile court judge to refer to yet another procedural statute and "explain" to the juvenile "the law relating to the admissibility of the record of a juvenile court adjudication in a [later] criminal proceeding." This "law" is found in Article 37.07, § 3(a) of the Code of Criminal Procedure, which concerns the procedure to be used during the punishment phase of a trial. It does not set punishment but provides the procedure by which a trial judge can decide what information may be properly considered in deciding an appropriate punishment. We hold that these provisions are procedural in nature and that the trial court's application of Article 37.07, § 3(a) as it existed at the time of Barletta's trial, did not deprive him of a substantive protection.

Further, counsel has directed us to no authority to support his position that the admissibility of the juvenile adjudication in a later criminal proceeding constitutes punishment for the initial offense, and we are aware of none.

■ Barletta next contends that the trial court erred at punishment by permitting the State to elicit details about the incident that resulted in his juvenile adjudication, rather than limiting the information to the fact that he was adjudicated guilty of the particular crime. In a connected argument, he also contends that the court erred by admitting testimony in the form of victim impact evidence related to the prior offense.

The first aspect of this argument was addressed recently by the Waco Court of Appeals in *Haney v. State*, 951 S.W.2d 551, 554–55 (Tex.App.Waco 1997, no pet.). In its discussion of the issue as controlled by TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a), the Waco court recognized that the legislature had provided that either the state or defendant could offer evidence of any matter the court deems relevant to sentencing, and that the statute goes on to specify that relevant evidence includes the defendant's prior criminal record and evidence of an extraneous crime or bad act proven beyond a reasonable doubt. The statute also provides specifically that evidence about the "bad acts" is admissible regardless of whether he has previously been charged with or finally convicted of

2. TEX. FAM.CODE ANN. § 54.03 (Vernon 1996 &     Supp.1999).

the crime or bad act. The reasoning of the Waco court is accurately based upon the statute and its discussion of the history of its application. This contention is overruled.

A more troublesome question involves the admissibility of the testimony about the impact of the death of the victim upon his family in the juvenile adjudication. The State presented evidence that Barletta was driving a car at over eighty-five miles per hour, with several teenage passengers in his car, ran a stop sign, and lost control. A passenger in his car died in the ensuing wreck. His juvenile adjudication resulted from the death. We have concluded that the evidence about the facts of the accident was admissible. In this instance, however, the complained-of testimony is that of the mother of the teenage victim who died in that accident.

Barletta's counsel sought and was granted a running objection to all of the testimony of all of the State's witnesses at punishment on multiple grounds, including his position that the testimony was not admissible under Rule of Evidence 403, his ex post facto statutory claim, and his contention that admitting the testimony constituted a denial of due process. The Texas Court of Criminal Appeals has held that a relevancy objection based upon Rule of Evidence 401 to extraneous offense evidence in this context is sufficient to support a later specific claim that victim impact testimony was improperly admitted. *Cantu v. State*, 939 S.W.2d 627, 637 (Tex. Crim.App.1997).

Evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing. Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a). Questions of relevance are left largely to the trial court, and we will not reverse on that basis absent an abuse of discretion. *Moreno v. State*, 858 S.W.2d 453, 463 (Tex.Crim.App.1993). In reviewing a trial court's relevancy decision under this standard, we look to see if the trial court's ruling was within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim. App.1990) (opinion on reh'g).

Our review in this situation is controlled by *Cantu*, 939 S.W.2d at 636–37. In that case, Cantu was tried for the murder of Jennifer Ertman. At punishment, testimony by the mother of another victim, Elizabeth Pena, who died during the same criminal episode, was admitted. She testified, similarly to the mother in this case, about her relationship with her daughter, the events surrounding the disappearance of her daughter, and the effect that her daughter's death was having on her and the rest of the family. The court noted that Cantu was not on trial for the murder of Pena. It further stated categorically that the case law did not support the admission of such evidence and the cases that validate victim impact testimony are limited to testimony about the victim named in the indictment upon which the defendant is being tried. The court stated that:

> The admission of such evidence would open the door to admission of victim impact evidence arising from *any* extraneous offense committed by a defendant. Extraneous victim impact evidence, if anything, is more prejudicial than the non-extraneous victim impact evidence found by this Court to be inadmissible in *Smith, supra.* We hold that such evidence is irrelevant under Tex.R.Crim. Evid. 401 and therefore irrelevant in the context of the special issues under Art. 37.071 [the capital murder statute].

*Cantu*, 939 S.W.2d at 637.

Despite this analysis, the court then concluded that the erroneous admission of the testimony was harmless beyond a reasonable doubt, because the witness was one of over thirty witnesses who testified at punishment, because her testimony was only twenty pages of a 700-page punishment record, because the state did not mention her testimony during jury argument and because the overwhelming focus during the punishment phase was on Cantu's be-

havior and the circumstances of the offense at bar.

■ In applying this analysis, we must first look to see whether the claim of error was preserved for review. Our analysis is complicated by the way in which this testimony was presented to the jury. It is clear that the trial court granted counsel a running objection to testimony by multiple witnesses based upon relevance. Counsel can preserve error by obtaining a specific running objection as to a specific line of questioning by obtaining a contrary ruling by the trial judge outside the presence of the jury. TEX.R.APP. P. 33.1; *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991).

■ It is not clear, however, that the relevance objection made by counsel in his running objection applies to the complained-of testimony. The running objection as to relevancy/unfair prejudice was to the underlying facts of the prior offense. At that point, impact testimony by the mother of the victim in the prior accident was not discussed. We conclude that this claim of error was not preserved for review by the running objections made before testimony commenced.

The further question is whether specific and timely objections were made during the witness' testimony. At certain points during the mother's testimony, counsel made several specific objections to her testimony on the basis of relevance which were sustained by the court, and one which was overruled.

■ The general rule is that a complaining party must first object, and if the objection is sustained, must then ask for an instruction to disregard. If the instruction is given, counsel must then move for a mistrial. *Nethery v. State*, 692 S.W.2d 686, 701 (Tex.Crim.App.1985); *Coe v. State*, 683 S.W.2d 431, 436 (Tex.Crim.App. 1984). If counsel does not pursue the objection to an adverse ruling, error is not preserved for appellate review. TEX.

R.APP. P. 33.1; *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex.Crim.App.1991).

■ The testimony was offered in the following sequence. The witness first identified herself, her husband, and her surviving daughter. She then identified her son as the individual killed in the earlier accident. She testified about her inability to have any more children and the impact of the loss of her only son, and about the telephone call that she received from her son shortly before he got into the car in which he died. She testified about the way that she was informed of his death, and about his personal characteristics and interests—his interest in football, his upcoming first date, his loving nature, his interest in religion, and his helpful nature.

At that point, counsel objected to her testimony based upon relevancy. The court sustained the objection "to the answers going on. I trust that we're—you're about to—[finish]." The State went on to ask her what kind of grades her son made. Counsel again objected, and the court sustained the objection.

■ The State then asked the witness if the impact of the loss of her son was substantial. Counsel again objected, and the court overruled the objection. However, after the witness answered that question, she then continued, testifying at some length without further objection about the pain and despair that both she and her husband felt because of the loss of their child. As she finished, counsel again objected, and the trial court sustained the objection and directed the State to move along. At that point, the State ended its questioning.

Under the holding of *Cantu*, the victim impact testimony should not have been presented to the jury. However, after the State's questioning veered into areas that involved victim impact rather than the facts of the previous offense, the relevancy objections made to the testimony were sustained, and no further relief was sought.

The sole objection in this sequence that was overruled by the trial court was to a question that did not ask the witness to expound upon the impact of the previous crime, but merely asked if there had been an impact. It is arguable that even that question was improper. We nevertheless conclude that her answer to that question: that there was a substantial impact upon her family because of the loss of her son, was not so inflammatory as to affect a substantial right of the accused in this case.[3]

Based upon this state of the record, we conclude that the claim of erroneous admission of the victim impact testimony was not preserved for appellate review. The bare question of whether the death caused a substantial impact upon the witness' family, standing alone, is not so inflammatory or unfairly prejudicial as to affect a substantial right of the accused in this case. TEX.R.APP. P. 44.2.

The judgment is affirmed.