COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS






THELMA ENRIQUEZ,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 

No. 08-02-00005-CR



Appeal from the


243rd Judicial District Court 

of El Paso County, Texas 


(TC# 20000D03872)



M E M O R A N D U M O P I N I O N


 Appellant appeals her conviction for theft and misapplication of fiduciary property. 
Appellant pled guilty and was sentenced to twelve (12) years' confinement in the Texas
Department of Criminal Justice and a $3000 fine. We affirm the judgment of the trial court.

I. FAILURE TO STATE AN OFFENSE UNDER THE INDICTMENT

 In Point of Error No. One, Appellant complained that the indictment failed to state an
offense under Texas law. Appellant argued that the aggregating portion of the theft
indictment was erroneous and that the misapplication of fiduciary property indictment failed
to state for whose benefit the property was held. Thus, Appellant contended that her guilty
pleas were null.

A. Indictments

 The theft indictment against Appellant provided as follows:

 [F]rom on or about the 4th day of April, 1996 until on or about the 5th day
of April, 2000, the said Defendant, did then and there unlawfully appropriate,
by acquiring and otherwise exercising control over property other than real
property, to-wit: United States Currency of the value of $200,000 or more
from HUMBERTO MIJARES the owner thereof, with intent to deprive the
said owner of said property;


 And all of said amounts were obtained, (sic) the County of El Paso as alleged
in one scheme and continuing course of conduct, and the aggregate amount of
the amounts stolen was $200,000 or more,


The misapplication of fiduciary property indictment provided as follows:

 [D]id then and there, pursuant to one scheme and continuing course of conduct
which began on or about the 4th day of April, 1996, and continued on or
about the 5th day of April, 2000, intentionally, knowingly, and recklessly
misapply property, to-wit: United States Currency, that the said Defendant
held as a fiduciary and as a person acting in a fiduciary capacity, but not as a
commercial bailee, contrary to an agreement under which the said Defendant
held the property, and in a manner that involved substantial risk of loss of
property to HUMBERTO MIJARES the owner of said property, and for
whose bebfit (sic) the property was held, and the aggregate value of the
property obtained was $200,000 or more,


Appellant challenged the indictments since the theft count failed to include the word "in"
before the words "County of El Paso" and since "benefit" was misspelled as "bebfit" and
claimed that these omissions made the indictments unintelligible.

B. Applicable Law

 An indictment is not constitutionally void if it accuses Appellant of a crime with
enough clarity and sufficiency to identify the penal statute under which the State intended to
prosecute. See Duron v. State, 956 S.W.2d 547, 550-51 (Tex. Crim. App. 1997); Duffy v.
State, 33 S.W.3d 17, 25-26 (Tex. App.--El Paso 2000, no pet.). If the defendant does not
object to a defect, error, or irregularity of form or substance in an indictment or information
before the date on which the trial on the merits commences, he waives and forfeits the right
to object to the defect, error, or irregularity and he may not raise the objection on appeal or
in any other postconviction proceeding. Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon
Supp. 2004).

Misspelling

 As a general rule, the mere misspelling of a word does not render an otherwise good
indictment invalid if the sense is not affected and the meaning cannot be mistaken. Ablon
v. State, 537 S.W.2d 267, 269 (Tex. Crim. App. 1976) (holding that the misspelling of
"diazepam" as "diazedam" did not affect the validity of the indictment); see also Lute v.
State, 314 S.W.2d 98 (Tex. Crim. App. 1958), Cantu v. State, 944 S.W.2d 669, 671 (Tex.
App.--Corpus Christi 1997, pet. ref'd) (holding the misspelling of the narcotic drug "heroin"
as "herion" did not invalidate the indictment; Fitts v. State, 982 S.W.2d 175, 184 (Tex. App.--Houston [1st Dist.] 1998, pet. ref'd) (holding that the misspelling of the word
"remuneration" as "renumeration" did not result in failure to give the necessary notice of the
statutory offense with which the defendant was charged).

Omission of Preposition

 Further, it is well-settled that the omission of a word or words in an indictment is not
fatal if that part omitted is not essential to the certainty necessary in the description of the
offense and does not affect the meaning. Ansley v. State, 468 S.W.2d 862, 864 (Tex. Crim.
App. 1971); see also Roy v. State, 608 S.W.2d 645, 652 n.7 (Tex. Crim. App. 1980)
(involving Appellant's allegation that the indictment was fatally defective because the word
"did" was omitted after "attempt and commit theft" and where the Court held that the
indictment was not fundamentally defective); Perez Garza v. State, 708 S.W.2d 570, 571
(Tex. App.--Houston [1st Dist.] 1986, pet. ref'd) (involving an indictment which alleged that
the Appellant "did appropriate acquiring and otherwise exercising control over property" and
Appellant complained that the indictment failed to allege that Appellant "did appropriate by
acquiring and otherwise exercising control over property" and the court held that the wording
of the indictment was sufficient to allege the offense of theft, despite the omission of the
preposition "by").

C. Application

 Here, Appellant failed to file a motion to quash the indictment or object to the alleged
defects in the indictment. Thus, Appellant failed to preserve her complaint for appeal. 
Further, the indictments against Appellant were not defective since neither the misspelling
of "benefit" nor the omission of "in" affected the meaning of the indictments or the
sufficiency of the charged offenses. See Ablon, 537 S.W.2d at 269; Perez Garza, 708
S.W.2d at 571. Accordingly, Appellant's Point of Error No. One is overruled.

II. ADMISSION OF VICTIM IMPACT TESTIMONY

 In Point of Error No. Two, Appellant complained that the trial court erred in admitting
victim impact evidence unrelated to the indicted offenses. Appellant argued that since
Humberto Mijares was listed as the complaining witness that the trial court should not have
also allowed impact evidence from Norma Garcia and Jorge Mora.

A. Factual Summary

 At trial, Humberto Mijares, architect and owner of Mijares Mora Architects, Inc.
(formerly known as Mijares Group), testified that Appellant started out as his receptionist
and worked her way up to the bookkeeper/office manager position. In May 2000, Appellant
took sick leave, and Mijares discovered numerous unpaid bills from utility and insurance
companies. His discovery raised a red flag, and Mijares called in his accountant and found
checks which opened the door. Mijares stated that the theft and misapplication of property
had a pretty severe effect on him since he discovered a trusted employee had been stealing. 
He also commented that it had an effect on the staff since the firm began receiving demand
letters from a consultant and attorney since fees had not been paid. Further, people who did
business with the firm began to panic and wonder whether the firm would survive. Last,
Mijares was concerned about his business reputation. 

 Jorge Mora, a partner in Mijares Group Architects, testified that the Appellant's theft
also had an impact on him since Mijares had initiated a profit sharing plan for employees and
there was no profit to share, and thus, he did not receive any profit distribution. Mora had
also lost confidence and trust in employees. 

 Norma Garcia, the firm's office manager and former receptionist, testified that
Appellant had been her best friend and that she had spoken to her frequently at work
concerning her personal and social life. Garcia stated that the Appellant's actions had an
impact on her since Mijares did not trust anyone and it was hard to regain his trust. In
addition, Garcia's children asked about Appellant all the time, and Garcia had confided in
Appellant like a sister. 

B. Applicable Law

 To preserve error for appellate review, the record must show that a complaint was
made to the trial court by a timely request, objection, or motion. Tex. R. App. P. 33.1(a); see
also James v. State, 772 S.W.2d 84, 101 (Tex. Crim. App. 1989), vacated on other grounds,
493 U.S. 885, 110 S.Ct. 225, 107 L.Ed.2d 178 (1989) (holding failure to object to victim
impact evidence waived review on appeal); Barletta v. State, 994 S.W.2d 708, 715 (Tex.
App.--Texarkana 1999, pet. ref'd) (finding that Appellant's claim of erroneous admission of
victim impact testimony was not preserved for appellate review).

 The Court of Criminal Appeals has held in the context of a capital murder case that
victim-impact testimony regarding the impact of the death of a different victim not named
in the indictment was improperly admitted. See Cantu v. State, 939 S.W.2d 627, 637 (Tex.
Crim. App.), cert. denied, 522 U.S. 994, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997). However,
victim impact testimony concerning the effect of the offense upon the victim's family is
admissible. Richardson v. State, 83 S.W.3d 332, 361 (Tex. App.--Corpus Christi 1999, pet.
ref'd) (where a defendant was charged with murdering his wife and the court allowed in
evidence regarding the psychological effect on the couple's children). Further, victim-impact
evidence is admissible if relevant to sentencing, which includes but is not limited to the
circumstances of the offense for which the defendant is being tried. See Fleming v. State,
956 S.W.2d 620, 623-24 (Tex. App.--Eastland 1997, pet. ref'd) (allowing victim impact
testimony from victim's wife and mother who were also shot and present when the victim
was killed).

C. Application

 Here, Appellant at no time objected to the admission of victim impact testimony from
Mora or Garcia. Thus, Appellant failed to preserve error regarding admission of the
evidence. Further, the admitted victim impact testimony reflected the impact on the
witnesses as a result of the indicted offenses, not extraneous offenses. See Cantu, 939
S.W.2d at 637 (where court disallowed impact testimony regarding the death of another
victim). Accordingly, Appellant's Point of Error No. Two is overruled.

III. JURY MISCONDUCT

 In Point of Error No. Three, Appellant argued she should have been granted a new
trial due to jury misconduct. Appellant complained that the jury had applied the law of
parole in determining the length of her punishment.



A. Factual Summary

 Appellant filed a motion for new trial in which she alleged jury misconduct. She
attached an affidavit from Dolph Quijano, her trial counsel, stating that he spoke to the jury
after the rendering of Appellant's sentence concerning the length of the punishment. Juror
No. 10, John H. Schastey, told Quijano that the jury wanted Appellant to serve at least two
to three years, so the jury figured it out and decided on a twelve-year sentence. In its
response to Appellant's motion for new trial, the State objected to the affidavit of Quijano
under Texas Rule of Evidence 606(b) and 802. A hearing was held on Appellant's motion. 
At the hearing, the State again objected to Quijano's testimony pursuant to Rule 606(b). The
trial court sustained the State's objection but allowed Appellant to make a bill of exception. 
Quijano testified that he believed the jury applied the parole law to calculate Appellant's
sentence. Further, Quijano provided that he requested that the court disclose addresses of
the jurors so that they could be contacted and affidavits obtained to verify juror misconduct. 
The trial court denied the motion for new trial and the request for disclosure. 

B. Applicable Law

 We review a trial court's denial of a motion for new trial under an abuse of discretion
standard. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). An abuse of discretion
occurs when the trial court's decision is arbitrary or unreasonable. State v. Read, 965 S.W.2d
74, 77 (Tex. App.--Austin 1998, no pet.). The trial court's decision to deny the motion for
new trial will be sustained if it is correct on any theory of law applicable to the case. Id.

 A trial court abuses its discretion if it fails to hold a hearing on a motion for new trial
which raises matters not determinable from the record. King v. State, 29 S.W.3d 556, 569
(Tex. Crim. App. 2000). There is no requirement for a hearing, however, if the motion for
new trial and supporting affidavits are not adequate to place the trial court on notice that
reasonable grounds for a new trial may exist. Jordan v. State, 883 S.W.2d 664, 665 (Tex.
Crim.App. 1994). Affidavit testimony to support the motion states reasonable grounds only
if the matter discussed in the affidavit would be admissible in a subsequent hearing on the
motion. See Dunkins v. State, 838 S.W.2d 898, 899 (Tex.App.--Texarkana 1992, pet. ref'd). 

 Texas Rule of Evidence 606(b), which governs admissibility of juror testimony,
provides as follows: 

 Upon an inquiry into the validity of a verdict or indictment, a juror may not
testify as to any matter or statement occurring during the jury's deliberations,
or to the effect of anything on any juror's mind or emotions or mental
processes, as influencing any juror's assent to or dissent from the verdict or
indictment. Nor may a juror's affidavit or any statement by a juror concerning
any matter about which the juror would be precluded from testifying be
admitted in evidence for any of these purposes. However, a juror may testify:
(1) whether any outside influence was improperly brought to bear upon any
juror; or (2) to rebut a claim that the juror was not qualified to serve. 


Tex. R. Evid. 606(b). "Former Criminal Rule 606(b) permitted jurors to testify to anything
relevant to the validity of a verdict or indictment." Sanders v. State, 1 SW3d 885, 887 (Tex.
App.--Austin, 1999 no pet.); see Buentello v. State, 826 S.W.2d 610, 613-14 (Tex. Crim.
App. 1992). However, Texas Rule of Evidence 606(b) now narrowly limits a juror's ability
to testify to two exceptions: (1) whether any outside influence was improperly brought to
bear upon a juror or (2) to rebut a claim that a juror was not qualified to serve. See Hicks v.
State, 15 S.W.3d 626, 630 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd); Sanders, 1
S.W.3d at, 887. We have previously recognized that the new rule emasculated a defendant's
ability to produce evidence as to matters occurring during the jury's deliberations, including
jury misconduct. See Rhinehardt v. State, No. 08-01-00335-CR, 2003 WL 21674198 (Tex.
App.--El Paso July 17, 2003, no pet.); see also Hicks, 15 S.W.3d at 630 (finding that affidavit
of juror was inadmissible under 606(b)); Sanders, 1 S.W.3d at 887 (holding affidavit of juror
was inadmissible). While we recognize that Rule 606(b) places a dramatic restriction on a
defendant's ability to prove jury misconduct, the defendant is not precluded from offering
other evidence, such as testimony of a non juror with personal knowledge of the misconduct.
See Mayo v. State, 708 S.W.2d 854, 856 (Tex. Crim. App. 1986) (allowing witness to testify
regarding telephone conversation with juror).

C. Application

 Here, Appellant did not offer an affidavit by a member of the jury but from her trial
counsel. However, Appellant failed to show that Quijano had personal knowledge of the
misconduct since Quijano was not present during jury deliberations and did not have outside
contact with the jury. In fact, Quijano's affidavit merely stated a juror had discussed
misconduct with him after the trial failing to demonstrate personal knowledge, and thus, his
affidavit was prohibited under Rule 606(b). Hicks, 15 S.W.3d at 630; Sanders, 1 S.W.3d at
887. We find that the trial court did not abuse its discretion in denying Appellant's motion
for new trial since Appellant's supporting affidavit was inadequate to place the court on
notice that reasonable grounds for a new trial might have existed. Accordingly, Appellant's
Point of Error No. Three is overruled, and the judgment of the trial court is affirmed.

 Having overruled each of Appellant's issues on review, we affirm the judgment of the
trial court.

July 21, 2004



 RICHARD BARAJAS, Chief Justice


Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.




(Do Not Publish)