**Petition for Writ of Habeas Corpus Granted, in Part, and Denied, in Part; Relator Remanded to Custody of Harris County Sheriff; and Opinion filed May 28, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00062-CV

## IN RE CLIFFORD HALL, Relator

**ORIGINAL PROCEEDING**
**WRIT OF HABEAS CORPUS**
**310th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2003-20180**

## OPINION

On January 23, 2014, relator Clifford Hall filed a petition for writ of habeas corpus in this Court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, relator claims the underlying commitment order is void and requests that he be discharged from confinement. Pending review, this Court issued the writ and set bond. Relator posted bond and was released from custody. We grant relator's petition for writ of habeas corpus, in part, striking the severable

portion of the void order, and deny the remainder of relator's petition, order his bond revoked, and remand him to the custody of the Harris County Sheriff.

## I. BACKGROUND

On July 25, 2012, the trial court orally rendered an order modifying a prior order that had required relator to pay $300 monthly child support. In the July 25, 2012 order, relator was ordered to pay $480 in regular monthly child support and $50 a month toward $1,800 he was ordered to pay in a prior judgment for a total monthly payment of $530. The trial court ordered the payments to be made through wage-withholding. The trial court signed the modification order on August 23, 2012.

Real party in interest, Donna Lane, filed a motion for enforcement by contempt on April 19, 2013, asserting that relator had not made payments due on August 1, 2012, October 1, 2012, November 1, 2012, January 1, 2013, February 1, 2013, March 1, 2013, and April 1, 2013. Donna alleged relator had only paid $1,496.91 of the $4,240 that was due and, therefore, owed $2,743.09. Donna further alleged several violations regarding possession of, and access to, the child. Relator was served with the motion for enforcement on April 30, 2013.

The motion was originally set for June 10, 2013. Between May 10, 2013, and June 6, 2013, relator made four direct payments, which he claimed cured the deficiency. But the payments did not bring him current. The motion was reset by agreement. Relator made another direct payment in October 17, 2013, which brought him current before the November 18, 2013 hearing on the motion for enforcement.

2

Although relator claimed at the hearing that the underpayments were caused by a system or clerical error on the part of his employer, the trial court found relator guilty of five separate counts of criminal contempt by failing to make child support payments on August 1, 2012, September 1, 2012, October 1, 2012, November 1, 2012, and December 1, 2012. The trial court further found realtor in civil contempt for three violations related to possession of, and access to, the child by failing to surrender the child at the appointed time on one occasion and exercising possession twice when he did not have court ordered access. The trial court also awarded a money judgment for attorney's fees and costs to Donna's attorney in the amount of $3,716 as additional child support.

As punishment for the criminal contempt, the trial court ordered relator confined in the Harris County jail for 180 days for each of the five counts of contempt, sentences to run concurrently. As punishment for the civil contempt, the trial court ordered relator confined until he had paid $3,716 in attorney's fees to Donna's attorney.

In his petition, relator claims the commitment order is void because (1) the trial court found him in contempt for the September 1, 2012 support payment when he had actually paid more than the full amount; (2) it was based on an unsigned nunc pro tunc final order; (3) it states the wrong date of the hearing and the wrong court and does not direct the sheriff to take him into custody; (4) the motion for enforcement states the wrong trial court cause number; (5) the Office of the Attorney General ("OAG") was not given notice of the hearing on the motion for enforcement; (6) relator did not willfully disobey the July 25, 2012 order; and (7)

3

the repeal of Section 157.162(d) of the Texas Family Code—the "purging provision"—creates a procedural due process violation.

After relator filed his habeas corpus petition in this court, Donna filed a motion for order nunc pro tunc in the trial court to correct certain clerical errors. On February 14, 2014, the trial court signed (1) an agreed order on motion for judgment nunc pro tunc; and (2) an agreed nunc pro tunc contempt order to reflect the correct date of the hearing and the correct trial court, which has continuing jurisdiction.

## II. STANDARD OF REVIEW

The power to punish a party who fails or refuses to obey a prior court order or decree is an inherent power of a court and is an essential element of judicial independence and authority. *Ex parte Bennett*, 600 S.W.2d 252, 254 (Tex. 1980) (orig. proceeding). A commitment order is subject to collateral attack in a habeas corpus proceeding. *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005) (orig. proceeding) (per curiam). The purpose of the habeas corpus proceeding is not to determine the guilt or innocence of the relator, but only to determine whether he has been unlawfully restrained. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding). A writ of habeas corpus will issue if the trial court's contempt order is void, either because it is beyond the trial court's power or because the relator has not been afforded due process. *Henry*, 154 S.W.3d at 596. It is presumed that the contempt order is valid. *In re Turner*, 177 S.W.3d 284, 288 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding). In a habeas corpus action challenging confinement for contempt, the relator bears the burden of

4

showing that the contempt order is void. *In re Coppock*, 277 S.W.3d 417, 418−19 (Tex. 2009) (orig. proceeding).

### III. ANALYSIS

### A. Striking the September 1, 2012 Violation Does Not Render the Entire Order Void

In his first issue, relator claims the commitment order is void because of a material discrepancy finding that relator had violated the July 25, 2012 order for failing to make a full payment on September 1, 2012, when he had paid more than his child support obligation. Relator argues the discrepancy is material and renders the commitment order void in its entirety.

In her motion for enforcement, Donna did not allege that relator had violated the July 25, 2012 order by failing to make a payment on September 1, 2012. In this mandamus proceeding, Donna states the September 1, 2012 violation should be stricken from the commitment order, leaving the remaining violations found by the trial court intact.

If one punishment is assessed for more than one act of contempt, and one act is not punishable by contempt, the entire judgment is void. *Henry*, 154 S.W.3d at 598; *In re Gabbai*, 968 S.W.2d 929, 931 (Tex. 1998) (orig. proceeding) (per curiam). However, where the trial court lists each failure separately and assesses a separate punishment for each failure, only the invalid portion is void; the invalid portion may be severed, and the valid portion retained. *Ex parte Linder*, 783 S.W.2d 754, 758 (Tex. App.—Dallas 1990, orig. proceeding); *see also Ex parte Russell*, 875 S.W.2d 467, 470 n.7 (Tex. App.—Austin 1994, orig. proceeding) ("It is possible to sever the invalid portion of a contempt judgment, leaving the

5

remainder intact, if the trial court assesses a separate punishment for each instance of non-compliance with the underlying order.").

In its order, the trial court listed five separate violations for not paying child support: August 1, 2012, September 1, 2012, October 1, 2012, November 1, 2012, and December 1, 2012. The order directs that relator be confined for a period of 180 days for each count, the sentences to run concurrently. Therefore, because a separate punishment has been assessed for each of the listed violations, only the punishment for the September 1, 2012 violation is void, and it may be severed from the remainder of the contempt order. If the severable portion of the contempt or commitment order is void, an appellate court may strike the offending portion and deny relief as to the valid portion of the order. *In re Broussard*, 112 S.W.3d 827, 831 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). Consequently, we strike the trial court's commitment order holding relator in contempt and confining him for 180 days for failing to make the September 1, 2012 support payment and leave the remainder of the commitment order intact. We sustain relator's first issue.

## B. Relator Had Notice of the Underlying Order

Relator has two issues related to notice. In his second issue relator claims the commitment order is void because it is based on an unsigned nunc pro tunc final order. At the November 18, 2013 hearing, the following exchange took place with regard to a nunc pro tunc order:

> MS. LEBLANC [Donna's Attorney]: And I'd ask the Court to take judicial notice of that [the July 25, 2012] final order. I believe there was a final order nunc pro tunc signed in this case in August of 2012.

6

THE COURT: Yes, ma'am.

Donna filed a motion for a nunc pro tunc order on September 17, 2012, but the trial court neither ruled on the motion nor signed a nunc pro tunc order. Donna's motion for enforcement alleged that relator had violated the July 25, 2012 order, not a subsequent nunc pro tunc order. The contempt order specifically references the July 25, 2012 order, and makes no mention of a nunc pro tunc order. Therefore, it was clear that relator was notified of what order it was alleged, and found, that he had violated. We overrule relator's second issue.

In his fourth issue, relator complains that the commitment order is void because the motion for enforcement states the incorrect trial court cause number, thereby failing to give him notice of the charges against him. Section 157.002(a) of the Texas Family Code sets forth what a motion for enforcement must include:

(a) A motion for enforcement must, in ordinary and concise language:

(1) identify the provision of order allegedly violated;

(2) state the manner of the respondent's alleged noncompliance;

(3) state the relief requested by the movant; and

(4) contain the signature of the movant or the movant's attorney.

Tex. Fam. Code Ann. § 157.002(a) (West 2014). Additionally, section 157.002(b) provides that a motion seeking enforcement of child support "(1) must include the amount owed as provided in the order, the amount paid, and the amount of arrearages; [and] (2) if contempt is requested, must include the portion of the order allegedly violated and, for each date of alleged contempt, the amount due and the amount paid, if any." *Id.* § 157.002(b)(1), (2).

7

The enforcement motion stated that the order violated was in cause number "2006-28865," which, according to relator, is a case in the 245th District Court. The correct trial court cause number of this case is 2003-20180. However, the caption of the enforcement motion correctly identified the trial court cause number. Moreover, the motion also alleged that the order violated was the July 25, 2012 order. The motion further identified (1) the portions of the order violated, namely the monthly support relator was required to pay on the first day of each month, plus an additional monthly amount toward a cumulative judgment of $1,800; (2) the dates relator did not comply with the support order either by not making any monthly payment or by underpaying the monthly amount due; (3) the amount relator had paid; and (4) the total amount still owed. Finally, by his testimony, relator demonstrated that he understood that Donna had alleged that he had not made the child support payments either at all or in full on the dates alleged in the motion.

A motion for enforcement of the terms and conditions of conservatorship or possession of, or access to, a child must include the date, place, and, if applicable, the time of each occasion of the alleged contemnor's failure to comply with the order. *Id.* 157.002(c). The enforcement motion further identified the possession schedule and the dates and how relator violated that schedule. We overrule relators' fourth issue.

8

## C. The Contempt Order Meets the Procedural Requirements

Relator makes a number of procedural complaints about the contempt order itself.

### 1. The Hearing Date

In his third issue, relator contends that, because the contempt order incorrectly states the hearing date as August 28, 2013, the November 18, 2013 written commitment order was not signed within a reasonable time after the finding of contempt. *See Ex Jordan*, 865 S.W.2d 459 (Tex. 1993) (orig. proceeding) (per curiam) (holding that waiting three days to sign written commitment order after orally confining contemnor violated constitutional due process).

On February 14, 2014, the trial court signed an agreed nunc pro tunc order correcting the hearing date to reflect that it was held on November 18, 2013, rather than August 28, 2013. Relator agreed to the nunc pro tunc order correcting that error, and he never disputed that the date of the hearing was November 18, 2013, the same date the trial court signed the contempt and commitment order.[1]

### 2. The Court Number

Relator further complains that the caption of the commitment order states it is in the "245th" District Court rather than the "310th" District Court, which is the court of continuing exclusive jurisdiction. That error was also corrected in the

---

[1] The purpose of a judgment nunc pro tunc is to correct a clerical error in the judgment after the court's plenary power has expired. *Jenkins v. Jenkins*, 16 S.W.3d 473, 482 (Tex. App.—El Paso 2000, no pet.). The trial court has plenary power to correct a clerical error made in entering final judgment, but it cannot correct a judicial error made in rendering final judgment. *Id.* It is the trial court's duty to ensure that its judgment conforms with the true state of the record. *Ferguson v. Naylor*, 860 S.W.2d 123, 126 (Tex. App.—Amarillo 1993, writ denied).

9

agreed nunc pro tunc order. Relator does not assert that he was confused as to which court was hearing the enforcement motion or entering the commitment order.

### 3. The Directive to the Sheriff

Relator also claims the commitment order is void because it does not direct the sheriff to take relator into custody and detain him under the terms of the judgment. "A commitment order is the warrant, process or order by which a court directs a ministerial officer to take custody of a person." *Ex parte Hernandez*, 827 S.W.2d 858, 858 (Tex. 1992) (orig. proceeding) (per curiam). Even when there is a signed written judgment or order of contempt, "a written order of commitment delivered to the sheriff or other appropriate officer is necessary to legally imprison a person." *Barnett*, 600 S.W.2d at 256. There is no particular form prescribed by law for an order of commitment. *Id.* It may be a separate order issued by the court, attachment or order issued by the clerk at the court's direction, or included in the contempt judgment. *Hernandez*, 827 S.W.2d at 858.

The order states:

IT IS FURTHER ORDERED that, as punishment for said contempt, the Respondent/Obligor, CLIFFORD HALL, be confined in the County Jail of Harris County, Texas, for a period of 180 days for each of the . . . counts of contempt and, as civil contempt, day to day thereafter to be detained by the Sheriff of Harris County, Texas.

IT IS FURTHER ORDERED that each period of confinement assessed herein shall run and be satisfied concurrently. More specifically, IT IS ORDERED that Respondent, CLIFFORD HALL, shall be confined in the county jail of Harris County, Texas, until Respondent has:

1[.]   paid $3,6716.00 as attorney's fees, which includes costs of this proceeding, to Michelle LeBlanc, Movant's attorney, at 801 Congress 4th Floor, Houston, Texas 77002.

Similar recitations have been held to be sufficient to direct the sheriff to take custody of the contemnor.  *See In re Spradley*, No. 05-05-01068-CV, 2005 WL 1950976, at *1 (Tex. App.—Dallas Aug. 16, 2005, orig. proceeding) (mem. op.); *Ex parte Johns*, 807 S.W.2d 768, 774 (Tex. App.—Dallas 1992, orig. proceeding); *Ex parte Linder*, 783 S.W.2d at 757.

This Court has previously addressed the sufficiency of the commitment order.  In *In re Stein*, this Court held that the following commitment order was insufficient because it failed to direct the sheriff or other ministerial officer to take the relator into custody and detain him under the terms of the contempt order:

> IT IS ORDERED that punishment for all violations is assessed at confinement in the county jail of Harris County, Texas, for a period of 179 days.

> IT IS THEREFORE ORDERED that Respondent is committed to the county jail of Harris County, Texas, for a period of 179 days for all violations enumerated above.[2]

331 S.W.3d 538, 540 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding). However, *Stein* is distinguishable because the commitment order at issue in this case directs that the Sheriff of Harris County detain relator under the contempt order, while the order in *Stein* does not.

---

[2] *Stein* does not quote the language of the commitment order in the opinion.  The language was located in the order contained in the habeas corpus record.

In *In re Walling*, this Court held the following language, "Let, therefore, commitment issue to the Sheriff of Harris County, Texas, accompanied by a signed copy of this order," was not sufficient to constitute a commitment order because it did not actually direct anyone to take the relator into custody. No. 14-03-00558-CV, 2003 WL 21543538, at *1 (Tex. App.—Houston [14th Dist.] July 10, 2003, orig. proceeding). Again, in *Walling*, the commitment order did not direct the Sheriff to take the relator into custody or otherwise detain him.[3]

The language of the commitment order in this case is sufficient to direct the sheriff to take custody of relator. We overrule relator's third issue.[4]

## D. Failure to Notify the OAG of the Proceeding

In his fifth issue, relator contends that the commitment order is void because the OAG was not given notice of the hearing on the enforcement motion. Relator

---

[3] Other opinions holding purported commitment orders invalid are distinguishable because they do not direct anyone to take the contemnor into custody. *See, e.g.*, *In re Zapata*, 129 S.W.3d 775, 780 (Tex. App.—Fort Worth 2004, orig. proceeding) (holding following language, "IT IS THEREFORE ORDERED that [Relator] is committed to the county jail of Terrant County, Texas, for a period of 180 days for each separate violation enumerated above," was insufficient to constitute a valid commitment order); *Ex parte Ustick*, 9 S.W.3d 922, 924−25 (Tex. App.—Waco 2000, orig. proceeding) (holding the following language, "The Court ORDERS [RELATOR] committed to the county jail for 180 days for each separate act of contempt, said commitments to run concurrently," and "The Court FINDS that Oligor . . . can pay the amount listed below and ORDERS *him* committed to the county jail until *he* pays $1000.00 in child support arrearages," was insufficient to constitute a valid commitment order).

[4] Relator points out, in the statement-of-facts section of his petition, other defects in the commitment order. Relator, however, has provided no argument or authority regarding these additional defects and, therefore, any complaints are waived. *See* Tex. R. App. P. 52.3(h).

argues that, because this is a "Title IV-D assigned case,"[5] the OAG should have been joined as a party, and without the OAG, complete relief was not given.

According to relator, during direct examination of Donna, the OAG was "repeatedly referred to as having failed to submit a correct wage withholding order to Relator's employer." Donna testified that the OAG's records showed that relator was required to pay $300 in monthly child support, not $530. Donna's attorney had to send the order to OAG's office multiple times to correct the record. Relator asserts a representative from the OAG's office should have been present to defend against that allegation. Therefore, according to relator, this case should have been dismissed according to Texas Rule of Civil Procedure 39. *See* Tex. R. Civ. P. 39.[6]

Generally, a "defect of parties" refers to joinder problems involving necessary or indispensable parties. *CHCA E. Houston, L.P. v. Henderson*, 99 S.W.3d 630, 633 (Tex. App.—Houston [14th Dist.] 2003, no pet.). A complaint of

---

[5] Title IV-D of the Social Security Act requires a state to provide services relating to the enforcement of child support obligations for a child who receives government assistance payments. *In re D.L.D.*, 374 S.W.3d 509, 516 (Tex. App.—San Antonio 2012, no pet.). In Texas, the OAG is designated to provide the Title IV-D services. *Id.* Therefore, the OAG is entitled to collect and distribute child support payments and to enforce child support orders. *Id.*

[6] Rule 39 governs the joinder of parties. *See* Tex. R. Civ. P. 39. It provides that a person who is subject to service of process shall be joined as a party to an action if: (1) his presence is needed to adjudicate the dispute and accord complete relief to those already parties; (2) his ability to protect his interests may be impaired or impeded if he is absent; or (3) his absence leaves one already a party subject to a substantial risk of multiple or inconsistent obligations. *Longoria v. Exxon Mobil Corp.*, 255 S.W.3d 174, 179−80 (Tex. App.—San Antonio 2008, pet. denied) (citing Tex. R. Civ. P. 39(a)). If a party required to be joined cannot be made a party, the trial court shall determine whether in equity and good conscience the action should proceed with the parties before it or whether it should be dismissed based on the several factors listed in Rule 39(b). Tex. R. Civ. P. 39(b).

"defect of parties" must be raised by verified objection pursuant to Rule 93(4). Tex. R. Civ. P. 93(4); *Allison v. Nat'l Union Fire Ins. Co.*, 703 S.W.2d 637, 638 (Tex. 1986) (per curiam); *CHCA E. Houston, L.P.*, 99 S.W.3d at 633. "'Under the provisions of our present Rule 39 it would be rare indeed if there were a person whose presence was so indispensable in the sense that his absence deprives the court of jurisdiction to adjudicate between the parties already joined.'" *Pirtle v. Gregory*, 629 S.W.2d 919, 220 (Tex. 1982) (per curiam) (quoting *Cooper v. Tex. Gulf Indus., Inc.*, 513 S.W.2d 200, 204 (Tex. 1974)). The instance of fundamental error is rare and does not exist where one has waived, consented to, or neglected to complain of an error at trial. *Jones v. LaFargue*, 758 S.W.2d 320, 324 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (citing *Pirtle*, 629 S.W.2d at 919). Relator did not file a Rule 93(4) verified plea objecting to the absence of the OAG and, therefore, has waived his complaint in this mandamus proceeding. *See id.* (holding that it "was not fundamental error for the trial court to proceed to judgment as the absence of any party did not deprive the trial court of jurisdiction"). We overrule relator's fifth issue.

### E. Deficiency in Wage Withholding

In his sixth issue, relator complains that the commitment order is void because he did not willfully disobey the court order; instead, a clerical error caused a deficiency in his wage withholding. Relator contends he made efforts to become current on his child support payments when he learned of the deficiency. Relator asserts the commitment order is void because the evidence conclusively establishes that he *did not intentionally* violate the trial court's order. *See Ex parte Rohleder*, 424 S.W.2d 891 (Tex. 1967) (orig. proceeding). Relator's reliance on *Rohleder* is

14

misplaced. In *Rohleder*, the court held that the contempt order was void because the evidence offered at the hearing conclusively established the relator was not able to borrow any money; his mother unsuccessfully attempted to mortgage her house; and he knew of no source from whom he could obtain that amount without collateral or security. *Id.* at 892.

As codified in section 157.008(c), the obligor may plead, as an affirmative defense to an allegation of contempt, that he (1) lacked the ability to provide the support in the amount ordered; (2) lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed; (3) attempted unsuccessfully to borrow the funds needed; and (4) knew of no source from which to obtain the money. Tex. Fam. Code Ann. § 157.008(c) (West 2014). The obligor must prove this defense by a preponderance of the evidence. *Ex parte Roosth*, 881 S.W.2d 300, 301 (Tex. 1994) (orig. proceeding) (per curiam).

Relator did not plead the specific statutory defense found in section 157.008(c), or offer evidence in support of it. We overrule relator's sixth issue.

## F. Repeal of Section 157.162(d) of the Texas Family Code

In his seventh issue, relator asserts a procedural due process violation because the repeal of Section 157.162(d) of the Texas Family Code allowed the trial court to sentence him to six months in jail even though he was current on his child support payments at the time of the contempt hearing.[7] Relator argues that, at the time he committed the contempt, he had the protection of former section

---

[7] *See* Act of May 23, 2007, 80th Leg., R.S., ch. 1189, § 1, 2007 Tex. Gen. Laws 4054, 4054, *repealed by* Act of May 22, 2013, 83d Leg., R.S., ch. 649, § 2, 2013 Tex. Sess. Law Serv. 1735, 1735 (West) (effective date June 14, 2013).

15

157.162(d), which provided that the trial court could not have found him in contempt for failure to pay child support if he appeared at the hearing with a copy of the payment record or other evidence showing that he was current in his child support payments. We conclude that this complaint, although styled as due process, is really a claim that the repeal was an ex post facto law as to relator.

Former section 157.162 provided:

> The court may not find a respondent in contempt of court for failure to pay child support if the respondent appears at the hearing with a copy of the payment record or other evidence satisfactory to the court showing that the respondent is current in the payment of child support as ordered by the court.

Act of May 23, 2007, 80th Leg., R.S., ch. 1189, § 1, 2007 Tex. Gen. Laws 4054, 4054.

Former section 157.162(d), which was enacted in 2007, was known as a "purging provision" because it allowed "a child support obligor to escape a valid finding of contempt if the obligor demonstrate[d] at the enforcement hearing that he or she [was] 'current in the payment of child support as ordered by the court.'" *In re Office of Attorney General*, 422 S.W.3d 623, 628 (Tex. 2013) (orig. proceeding) (quoting former Tex. Fam. Code Ann. § 157.162(d)). Absent the operation of section 157.162(d), the obligor could be held in contempt for failing to make payments in a timely fashion as required by the support order, regardless of the obligor's payment history since the filing of the motion to enforce. *Id.* The court further interpreted section 157.162(d) to mean that the obligor could only invoke the purging provision by demonstrating that he had no outstanding child support obligations as of the date of the enforcement hearing, not just to be current

16

on the payments pled in the motion for enforcement. *Id.* at 628−29. The section 157.162(d) purging provision was "akin to an affirmative defense." *Id.* at 631.[8]

However, Section 157.162(d) was repealed effective June 14, 2013. The repeal of section 157.162(d) applies to a hearing to enforce that commences on or after June 14, 2013. *See* Act of May 22, 2013, 83d Leg., R.S., ch. 649, § 3, 2013 Tex. Sess. Law Serv. 1735, 1735 (West) (providing that the repeal of section 157.162(d) applies to a hearing to enforce that commences on or after the effective date of the Act—June 14, 2013). Although Donna filed her enforcement motion on April 26, 2013, the hearing was not held until November 18, 2013. Therefore, relator was not able to take advantage of the section 157.162(d) purging provision at the November 18, 2013 hearing. The issue is whether the repeal of section 157.162(d) is an ex post facto law when relator's violations of the July 25, 2012 order arose during the time period in which section 157.162(d) was effective, but was no longer available to relator at the time of the contempt hearing.

Family law contempt proceedings are considered quasi-criminal in nature, and their proceedings should conform as nearly as practicable to those in criminal cases. *Ex parte Sanchez*, 703 S.W.2d 955, 957 (Tex. 1986) (orig. proceeding). The Texas Constitution prohibits ex post facto laws. *See* Tex. Const. art. I, § 16 ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."). An ex post facto law is any law that (1)

---

[8] The Texas Supreme court "recognize[d] that the purging provision is not contained in the statute expressly listing affirmative defenses to an allegation of contempt in a motion for enforcement. But it is analogous to an affirmative defense in that it precludes a contempt finding notwithstanding a proven violation of a prior order and places the burden of proof on the respondent to show that it applies." *Office of the Attorney Gen.*, 422 S.W.3d at 631 n.10 (internal citations omitted).

punishes as a crime any act that was innocent when performed; (2) inflicts greater punishment than the law attached to a criminal offense when committed; (3) deprives the accused of any defense available at the time the act was committed; or (4) alters the legal rules of evidence and requires less or different testimony than the law required at the time of the commission of the offense to convict the accused. *Pomier v. State*, 326 S.W.3d 373, 387 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Laws which do not amend substantive law by defining criminal acts or providing for penalties are procedural in nature. *Ex parte Johnson*, 697 S.W.2d 605, 607 (Tex. Crim. App. 1985); *Barletta v. State*, 994 S.W.2d 708, 711 (Tex. App.—Texarkana 1999, pet. ref'd). Remedial or procedural laws are not usually within the ex post facto prohibition. *Barletta*, 994 S.W.2d at 711.

However, if a procedural change is retroactive and results in a deprivation of a substantive protection, it is unconstitutional. *Ex parte Abahosh*, 561 S.W.2d 202, 203 (Tex. Crim. App. 1978). In *Abahosh*, at the time of his guilty plea—August 5, 1977—a defendant had an unrestricted right to appeal. *Id.* That right was restricted effective August 29, 1977, and required permission from the trial court to appeal. *Id.* The trial court denied the defendant permission to appeal—pursuant to the new restriction—at the time of his sentencing on September 9, 1977. *Id.* The court held that denying the defendant the right to appeal violated the prohibition against ex post facto laws because it deprived the defendant of the substantial protection of the right of appellate review that he had at the time of his guilty plea. *Id.* at 204.

In determining what is or is not barred under the ex post facto clause, courts have resorted to focusing on the "procedural" or "substantive" label of a statute or court ruling. *Ex parte Scales*, 853 S.W.2d 586, 588 (Tex. Crim. App. 1993). "However, the term 'procedural' has not been defined in any meaningful manner, and the term offers little guidance for an appellate court to use." *Id.* "Rather than view the label of the statute, it is infinitely more productive to look at the changes which occur." *Id.* "'[I]t is logical to think that the term ['procedural'] refers to changes in the procedures by which a criminal case is adjudicated, as opposed to changes in the substantive law of crimes.'" *Id.* (quoting *Collins v. Youngbood*, 497 U.S. 37, 45 (1990)). The repeal of section 157.162(d) did not amend substantive law regarding what acts constitute contempt or provide the available penalties for contempt; therefore, it is procedural in nature. *See Johnson*, 697 S.W.2d at 607. However, a procedural change is unconstitutional if it is retroactive and it results in a deprivation of a substantive protection. *See Abahosh*, 561 S.W.2d at 203.

We conclude that former rule 157.162(d) provided substantive protection to a party charged with contempt. Although a party could still have been guilty of contempt (failing to obey a court order), the court could not make a finding of contempt. *See Office of the Attorney Gen.*, 422 S.W.3d at 631 & n.10.

Having concluded that the purging provision provided substantive protection, we must determine if the repeal of that protection operated retroactively as to relator. The Texas Court of Criminal Appeals defined retroactive laws:

> A retroactive law is one meant to act on things that are past. As such, a statute is retroactive which takes away or impairs vested rights acquired under existing laws or creates new obligations, imposes new duties, or adopts a new disability in respect to transactions or

considerations already past, and which affects acts or rights accruing before it came into force.

*Abahosh*, 561 S.W.2d at 203−04 (internal quotes and citations omitted). In other words, a law is retroactive if it "'changes the legal consequences of acts completed before its effective date.'" *In re Ramirez*, 184 S.W.3d 392, 395 (Tex. App.—Dallas 2006, orig. proceeding) (quoting *Miller v. Florida*, 482 U.S. 423, 430 (1987)).

The repeal of section 157.162(d), which was effective June 14, 2013, was retroactive as it applied to contempt hearings held on or after that date, rather than on actions filed after that date. On the dates that relator committed the acts of contempt (failing to pay the child support timely), he had the "affirmative defense" of payment. The repeal took away that defense as of June 14, 2013.

However, we conclude the repeal did not violate realtor's substantive protections in this case because relator had the ability to take advantage of that affirmative defense before its repeal.[9] Relator was served with the motion for enforcement on April 30, 2013. Relator had until June 13, 2013—about six weeks—to become completely current on his child support obligations under the support order. If relator had done so, he could not have been held in contempt. Relator claims he was current by June 13, 2013 because he had made a total payment of $2,743.09, the amount of unpaid child support pleaded in Donna's motion to enforce. However, the first $1,060, or two monthly payments of $530, would have been applied to the May and June monthly payments. *See* Tex. Fam. Code Ann. § 157.268(1) (West 2014) (providing that child support collected shall

---

[9] We express no opinion as to any ex post facto violation under other timelines.

be applied first to current child support). Therefore, relator's payment of $2,743.09 did not cure the deficiency. Relator made no further effort to become current on his child support obligations by June 13, 2013. We hold the repeal of section 157.162(d) did not violate relator's substantive protections under the facts of this case. We overrule relator's seventh issue.

## IV. CONCLUSION

We grant relator's petition for writ of habeas corpus with respect to relator's first issue, and strike the portion of the commitment order holding relator in contempt and confining him for 180 days for failing to make the September 1, 2012 child support payment. We deny the remainder of relator's petition. We further revoke the bond set by this court on January 24, 2014, and order relator remanded to the custody of the Sheriff of Harris County, Texas, in accordance with the trial court's commitment order as modified by this opinion.

/s/     Tracy Christopher
          Justice

Panel consists of Justices Boyce, Christopher, and Brown.