**Petition for Writ of Mandamus Conditionally Granted, in Part, and Denied, in Part, and Memorandum Opinion filed October 2, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00693-CV

---

### IN RE STACIE LYNN DEPEAU, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**245th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-48772**

---

## MEMORANDUM OPINION

On August 25, 2014, relator Stacie Lynn Depeau filed a petition for writ of habeas corpus in this Court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, relator seeks relief from an August 22, 2014 contempt and commitment order issued by the Honorable Roy L. Moore, presiding judge of the 245th District Court of Harris County. We construe relator's petition as a

petition for writ of mandamus, and conditionally grant it, in part, and deny it, in part.

## I. BACKGROUND

Relator and real party in interest, Jon Scott Colen, were divorced pursuant to a final divorce decree signed by the trial court on June 11, 2013. The decree named relator and Colen joint managing conservators, with relator having the exclusive right to designate the primary residence of their two children.

On May 2, 2014, Colen filed a motion for enforcement of possession of and access to the children and subsequently, a first amended motion for enforcement, alleging twenty-nine violations of the divorce decree by relator. The trial court held an evidentiary hearing on May 29, 2014. The hearing was recessed until August 1, 2014, at which time the trial court orally rendered judgment, finding relator in contempt of the divorce decree on twenty of the twenty-nine alleged violations. The trial court ordered relator to appear on August 22, 2014, for commitment.

The trial court signed two orders on August 22, 2014. One order is entitled "Order Holding Respondent in Contempt for Separate Violations of the Decree Signed on June 11, 2013 and for Commitment." The other order is entitled "Enforcement Order." Both orders were filed at 11:35 a.m. on the same day they were signed. Both orders sentenced relator to 180 days in jail for each violation, sentences to run concurrently, and further directed that relator serve fifteen days in jail and that the remaining 165 days be probated. Relator was taken into custody that same day.

Relator filed her petition for writ of habeas corpus in this court on August 25, 2014, challenging her restraint in two issues. In the first issue, relator claims the commitment order violates her due process rights because it does not unambiguously state the manner in which she violated the underlying order. In the second issue, relator contends the motion for enforcement does not comply with the notice requirements to satisfy due process.

Subsequently to the filing of her petition in this court, Colen advised this court that relator was released from her confinement in jail and is serving her probated sentence.

## II. RESTRAINT OF LIBERTY

As an initial matter, Colen contends that, because relator is no longer incarcerated, her request for habeas relief is moot and her petition should be dismissed for lack of jurisdiction.

In a habeas corpus proceeding, the relator must show that she is under restraint of liberty. *In re Pierre*, 50 S.W.3d 554, 558 (Tex. App.—El Paso, 2001, orig. proceeding); *In re Ragland*, 973 S.W.2d 769, 771 (Tex. App.—Tyler 1998, orig. proceeding). Actual confinement is not necessary for the relator to be under restraint of liberty. *See Ex parte Williams*, 690 S.W.2d 243, 244 (Tex. 1985) (orig. proceeding) (holding that relator's liberty was restrained when he was released from jail on bail or personal bond because incarceration was not speculative possibility). Courts have extended the meaning of restraint to include some tangible restrictions imposed by community supervision.[1] On the other hand,

---

[1] *See, e.g.*, *Ex parte Brister*, 801 S.W.2d 833, 834−35 (Tex. 1990) (orig. proceeding) (holding that probation conditioned on payment of attorney's fees, monthly supervisory fees,

3

probation without any type of tangible restraint of liberty is not sufficient for habeas corpus relief.[2]

Here, the Section 8 of the "Enforcement Order" provides with respect to the probated sentence:

> The unserved 165 days of the 180 day sentence announced by this court is probated for 5 years under the following conditions: 1. Stacie Lynn Depeau complies with the order of this court dated June 11, 2013, or as modified by California order; and 2. Stacie Lynn Depeau complies with and appears at all compliance hearings.[3]

Relator is required to comply with the divorce decree and to attend all compliance hearings. The conditions of relator's probation are more akin to those

---

participation in outpatient family counseling, and submission to sixty days' house arrest and electronic monitoring was sufficient to constitute restraint of liberty); *Ragland*, 973 S.W.2d at 771 (holding that probation conditioned upon relator's performance of weekly community service over the course of a year under the supervision of the county probation department was sufficient restraint of liberty); *Ex parte Duncan*, 796 S.W.2d 562, 564 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding) (holding that probated sentence conditioned upon seeing probation officer and not traveling outside county was sufficient restraint of liberty).

[2] *See, e.g.*, *In re Parker*, No. 14-08-01070-CV, 2008 WL 5132558, at *1 (Tex. App.—Houston [14th Dist.] Dec. 4, 2008, orig. proceeding) (mem. op.) (holding that there was not sufficient restraint of liberty where only the condition of probated sentence was to comply with the terms of the divorce decree without any tangible restraint of liberty); *Ex parte Hughey*, 932 S.W.2d 308, 310−11 (Tex. App.—Tyler 1996, orig. proceeding) (holding that there was not sufficient restraint of liberty where the relator was not required to report to a community supervision officer or submit to visits by such officer, was not subject to house arrest, and was not confined geographically, but was merely required to pay child support and attorney's fees arrearages incurred as a result of his failure to comply with the court's orders, comply with the terms of the orders, and pay related attorney's fees and court costs).

[3] The "Order Holding Respondent in Contempt for Separate Violations of the Decree Signed on June 11, 2013 and for Commitment" directed with respect to the probated sentence: "The remaining 165 days is [sic] probated pursuant to the terms set forth in the Enforcement Order in Section 8."

in *Hughey* and *Parker*. Therefore relator is not under restraint and is not entitled to habeas relief.

Our analysis, however, does not end here. We may construe relator's habeas petition as a mandamus petition, and address her challenges to the contempt order.[4] In a habeas corpus proceeding, a writ will issue if the trial court's contempt order is void, either because it is beyond the trial court's power or because the relator has not been afforded due process. *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005) (orig. proceedings) (per curiam). Similarly, the relator is entitled to mandamus relief when the trial court renders a void order. *In re Stearn*, 436 S.W.3d 41, 46 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding). Thus, even if relator's liberty is not restrained by the conditions of her probation we, nonetheless, address her challenges to the contempt order in a mandamus proceeding just as we would in a habeas proceeding.

### III. SUFFICIENCY OF NOTICE PURSUANT TO THE CONTEMPT ORDER

In her first issue, relator asserts that the commitment order violates her due process rights because it does not unambiguously state the manner in which she

---

[4] *See In re Spates*, No. 14-14-00603-CV, 2014 WL 4262197, at *2 (Tex. App.—Houston [14th Dist.] Aug. 28, 2014, orig. proceeding) (mem. op.) (construing habeas petition as mandamus petition where the relator filed habeas petition prior to commencement of confinement to jail); *In re Easton*, 203 S.W.3d 438, 441 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding) (perceiving no jurisdiction to entertain an application for writ of habeas corpus, but would construe it as a mandamus petition where there was no restraint of liberty); *see also In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding) (per curiam) ("Contempt orders that do not involve confinement cannot be reviewed by writ of habeas corpus, and the only possible relief is a writ of mandamus."); *Snodgrass v. Snodgrass*, 332 S.W.3d 653, 660 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (explaining that an appellate court may review a contempt order in a habeas corpus proceeding if there is a current restraint on the relator's liberty, or in a mandamus proceeding if there is no such restraint).

violated the underlying order.  Section 157.166 of the Texas Family Code specifies the required contents of an enforcement order:

(a) An enforcement order must include:

(1) in ordinary and concise language the provisions of the order for which enforcement was requested;

(2) the acts or omissions that are the subject of the order;

(3) the manner of the respondent's noncompliance; and

(4) the relief granted by the court.

(b) If the order imposes incarceration or a fine for criminal contempt, an enforcement order must contain findings identifying, setting out, or incorporating by reference the provisions of the order for which enforcement was requested and the date of each occasion when the respondent's failure to comply with the order was found to constitute criminal contempt.

Tex. Fam. Code Ann. § 157.166(a), (b) (West 2014).

Relator includes in the mandamus record the "Order Holding Respondent in Contempt for Separate Violations of the Decree Signed on June 11, 2013 and for Commitment."  This order does not refer to the relevant provisions of the divorce decree and it does not list any of the violations the trial court found relator to have committed.  If this were the "contempt" order, it would not satisfy section 157.166's requirements.

Colen, however, included the "Enforcement Order" in the appendix to his response.[5]  Relator does not challenge the "Enforcement Order" as being

---

[5] Relator does not mention or refer to the "Enforcement Order" in her petition.  In her reply, relator states that the "Enforcement Order" was not on the online records of the Harris

insufficient to satisfy notice requirements. However, relator complains that, to the extent the "Enforcement Order" is an order for her commitment at 9:00 a.m., on August 22, 2014, it is improper because it was not signed until after it was filed at 11:35 a.m., on August 22, 2014. Without citing any authority, relator contends that she cannot be served with a "corrected order" "to make good on her previously restrained liberty." Texas courts have held that a corrected contempt and commitment order issued weeks after the trial court's contempt finding is not sufficiently close in time to the finding of contempt to satisfy due process requirements.[6]

At the August 1, 2014 hearing, the trial court orally announced its findings of relator's violations of the divorce decree. The trial court directed Colen's attorney to draft the order in accordance with its oral pronouncement, and to set the entry and commitment for 9:00 a.m., on August 22, 2014. The "Enforcement Order," or the "corrected order" as relator refers to it, was signed on August 22, 2014—the same day as the "Order Holding Respondent in Contempt for Separate Violations of the Decree Signed on June 11, 2013 and for Commitment"—the

---

County District Clerk as of the morning of September 3, 2014, and no such order had been served on her. The copy of the "Enforcement Order" included in Colen's appendix was certified on August 27, 2014, and it appears that it was obtained from the District Clerk's online records.

[6] *See Ex parte Delcourt*, 888 S.W.2d 811, 812 (Tex. 1994) (orig. proceeding) (per curiam) (holding that second commitment order issued more than two weeks after contempt hearing was void because it was not signed sufficiently close in time to trial court's pronouncement of contempt to satisfy due process requirements); *Spates*, 2014 WL 4262197, at *4 (holding that corrected contempt order signed within weeks after habeas relief was granted pointing out defect in previous order was not signed sufficiently close in time to pronouncement of contempt); *In re Houston*, 92 S.W.3d 870, 878 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding) ("The trial court may not modify a contempt judgment weeks after the original judgment has been entered and relator has sought habeas relief.").

7

order about which relator complains in this proceeding. From reading the reporter's record of the August 22, 2014, it appears that the trial court signed the "Enforcement Order" at the hearing. The trial court was clear that the contempt order had to be signed the same day the commitment was to begin. Having been signed the same day relator's commitment was to begin, the "Enforcement Order" was signed sufficiently close in time to pronouncement of relator's contempt and her commitment. We overrule relator's first issue.

## IV. SUFFICIENCY OF NOTICE OF ALLEGATIONS IN THE MOTION FOR ENFORCEMENT

In her second issue, relator complains that the commitment order is void because the neither motion for enforcement nor the underlying order complies with the Family Code.

### A. Requirements for Sufficient Order and Motion for Enforcement

Relator generally challenges each of the twenty violations on the basis that the motion for enforcement did not direct her to any "command language" in the order. The order underlying a contempt judgment must set forth the terms of compliance in clear, specific, and unambiguous terms so that the person charged with obeying the order will readily know exactly what duties and obligations are imposed on her. *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding). Whether an order is enforceable by contempt depends on whether the order is definite and certain. *Ex parte Reese*, 701 S.W.2d 840, 841 (Tex. 1986) (orig. proceeding). The focus is on the wording of the judgment itself. *Id.* If the court's order requires inferences or conclusions about which reasonable persons might differ, it is insufficient to support a judgment of contempt. *Chambers*, 898

S.W.2d at 260. Only reasonable alternative constructions will prevent enforcement of the order. *Id.* "The order need not be full of superfluous terms and specifications adequate to counter any flight of fancy a contemnor may imagine in order to declare it void." *Id.*

Relator also generally challenges each violation on the ground that the motion for enforcement did not, in ordinary and concise language, identify the provision of the order allegedly violated and sought to be enforced, and state the manner of relator's alleged noncompliance, or the date of the offense. The purpose of a motion for enforcement is to provide the contemnor with proper notice of the allegations of contempt for which he must prepare a defense at the hearing on the motion. *Ex parte Conoly*, 732 S.W.2d 695, 698 (Tex. App.—Dallas 1987, orig. proceeding).

Section 157.002 of the Texas Family Code, which sets forth the requirements of a motion for enforcement, provides, in relevant part:

(a) A motion for enforcement must, in ordinary and concise language:

    (1) identify the provision of the order allegedly violated and sought to be enforced;

    (2) state the manner of the respondent's alleged noncompliance;

    (3) state the relief requested by the movant; and

    (4) contain the signature of the movant or the movant's attorney.

*   *   *

(c) A motion for enforcement of the terms and conditions of conservatorship or possession of or access to a child must include the

9

date, place, and, if applicable, the time of each occasion of the respondent's failure to comply with the order.

Tex. Fam. Code Ann. § 157.002(a), (c) (West 2014).

Relator specifically relies on subsection (c), which requires that the motion for enforcement contain the dates of the alleged violations in addition to the requirements listed in subsection (a). Colen recognizes that relator's complaint is that the motion for enforcement does not comply with subsection (c) and that subsection requires that the motion for enforcement include the date of the violation. A review of the motion for enforcement reflects that it does not include the dates on which several of the offenses occurred. Colen does not address the subsection (c) requirement that the motion for enforcement contain the date of the violation, but contends that notice requirement was satisfied through the elements of subsection (a).

As addressed below, because of the failure to include the dates some of the violations were committed, not all twenty contempt findings may be upheld. *See Ex parte Arnold*, 926 S.W.2d 622, 624 (Tex. App.—Beaumont 1996, orig. proceeding) (holding the motion for enforcement gave sufficient notice regarding payment of medical expense because the allegations included the portion of the order violated, amount owed as provided in the order, and ***the date of each violation*** (citing Tex. Fam. Code Ann. § 157.002)). Such deficiency, however, does not make the entire contempt order void.

If one punishment is assessed for more than one act of contempt, and one act is not punishable by contempt, the entire judgment is void. *Henry*, 154 S.W.3d at 598; *In re Gabbai*, 968 S.W.2d 929, 931 (Tex. 1998) (orig. proceeding) (per

10

curiam). Where the trial court lists each failure separately and assesses a separate punishment for each failure, only the invalid portion is void; the invalid portion may be severed, and the valid portion retained. *In re Hall*, 433 S.W.3d 203, 207 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding); *see also In re Davis*, 305 S.W.3d 326, 330 (Tex. App.—Houston [14th Dist.] orig. proceeding) (holding that void portions of the contempt order did not render the entire order void because the trial court listed the contempt sentences separately). Here, the trial court found twenty separate violations of the divorce decree by relator and assessed punishment separately for each violation, to run concurrently.

Relator has challenged all twenty contempt findings. In order for the entire contempt order to be found void, relator must establish that each of the twenty findings of contempt are void under this issue, otherwise we must uphold the contempt order. *See Hall*, 433 S.W.3d at 207 (striking void portion of commitment order and leaving remainder intact). We address the twenty contempt findings below.

### B. Analysis of Violations

**<u>Violation 1</u>**

> Respondent has consistently failed to notify and inform Petitioner of the children's medical appointments through *Our Family Wizard*. Specifically, Respondent failed to notice Petitioner of [T.R.C.]'s orthodontist appointments on March 25, 2014 and April 8, 2014. Petitioner is unaware of other medical appointments for [T.R.C.] because of the failure of Respondent to notice him as ordered, but believes there are multiple other occasions when she has violated the Agreed Decree of Divorce as it pertains to this notice requirement.

11

The decree grants relator "the exclusive right to consent to medical, dental, and surgical treatment involving invasive procedures, after informing the other party via *Our Family Wizard*." Relator has not argued any other reasonable construction of this language, which requires relator to inform him via Our Family Wizard prior to the dental treatment. The motion alleged and the trial court found that relator failed to give Colen notice of T.R.C.'s orthodontist appointments on March 25, 2014, and April 8, 2014. The motion for enforcement satisfied the requirements of section 157.002 by advising relator of the provision she violated, how she violated it, and the dates on which she violated it. The trial court did not abuse its discretion by finding relator in contempt of Violation 1.

## Violation 2

> Respondent has consistently failed to notify and inform Petitioner as to psychiatric and psychological treatment of the children through *Our Family Wizard*. Specifically, and by her own admission in the affidavit attached to her ex-parte Request for Domestic Violence Restraining Order, [T.R.C.] "regularly sees Jessica St. Clair, MFT, for therapy and anxiety." Petitioner is aware of [T.R.C.]'s appointment with Jessica St. Clair on December 17, 2013 only as a result of Respondent's affidavit attached to the ex-parte Request. He has not received notice from Respondent as ordered.

The divorce decree gives relator the "exclusive right to consent to psychiatric and psychological treatment of the children, after informing the other party via *Our Family Wizard*." Relator has not put forth a reasonable alternative construction of the language of the decree, requiring her to notify Colen before such appointments. The motion alleged and the trial court found that relator failed to notify him of T.R.C.'s appointment with the therapist on December 17, 2013. The motion for enforcement satisfied the requirements of section 157.002 by

advising relator of the provision she violated, how she violated it, and the date on which she violated it. The trial court did not abuse its discretion by finding relator in contempt of Violation 2.

## **Violation 3**

> Respondent has consistently failed to notify Petitioner, as ordered, of the children's school events, school plays, extracurricular activities and school pictures through *Our Family Wizard*, including notice of the children's PTO/PTA/Open House dates and times and notice of [T.R.C.]'s field trip to the Gold Rush and [A.M.C.]'s field trip to Knott's Berry Farm on or about the last couple of days of her school in June 2014. Specifically, Respondent failed to notify Petitioner of the Parent Conference Day on August 7, 2013 through *Our Family Wizard*.

The divorce decree grants relator:

> the exclusive right to make decisions concerning the children's education, after informing the other party via *Our Family Wizard*; (See Special Paragraph below entitled "Additional Orders—Education").

The "Additional Orders—Education" paragraph provides as follows:

> . . . . The Court named STACIE DEPEAU as the parent to have exclusive decision making powers in education, and having directed STACIE DEPEAU to notify JON COLEN via *Our Family Wizard* the precise dates, days and times of the following:
>
> - Official School Schedule;
>
> - Official Year-Round Holiday and School Break Schedule;
>
> - All report cards and/or other grading mechanisms;
>
> - School plays or other school activities regardless of importance;

13

- School pictures taken and received by a parent.

Relator argues, with regard to the parent-teacher conference, there is no reference to any order that requires relator to send notice of a parent-teacher conference. Relator admits that it could be considered under "School plays and other school activities regardless of importance," but relator argues "so too would the school's schedule for cafeteria disinfecting." Thus, relator argues the order is too vague to be enforced.

The only reasonable interpretation of the order requires relator to notify Colen of a parent-teacher conference. *See Chambers*, 898 S.W.2d at 260 (explaining that only the existence of a reasonable, alternative construction prevents the enforcement of the order). An order need not be full of superfluous terms to be enforced. *Id.* Relator had sufficient notice of her obligation to notify Colen of a parent-teacher conference.

Relator further argues that, should we find that the divorce decree is specific enough to require that relator notify Colen of the parent-teacher conference, there is no date or time required by order to perform the task of reporting the event on Our Family Wizard. The two above-quoted sections of the divorce decree, when read to together, require relator to provide notice prior to the event. Relator also asserts that she does not know when she violated the decree. The motion, however, specified that the parent-teacher conference took place on August 7, 2013. The motion for enforcement gave relator notice of the provision she violated, how she violated it, and the date she violated.

As to the children's field trips, the motion for enforcement gave relator notice of the provision she violated and how she violated, but it did not state the dates of the violations.

The trial court did not abuse its discretion by finding relator in contempt of Violation 3 to the extent the finding applies to relator's failure to notify Colen of the parent-teacher conference. The trial court, however, abused its discretion by finding relator in contempt of Violation 3 to the extent the applies to the children's field trips.

## Violation 5

Respondent has not sent Petitioner notice of the children's gymnastics schedule, changes in that schedule, the names of their coaches and dates of competitions through *Our Family Wizard* as ordered.

## Violation 6

Respondent has not sent Petitioner notice of the children's diving schedule, changes in that schedule, the names of their coaches and dates of competitions through *Our Family Wizard*.

## Violation 7

Respondent has not sent Petitioner notice of [A.M.C.]'s involvement in Krav Maga, her activity schedule, changes in that schedule, the names of their coaches and dates of events/competitions through *Our Family Wizard* as ordered.

## Violation 8

Respondent has not sent Petitioner notice of [A.M.C.]'s involvement in horseback riding, her horseback riding schedule, locations, competitions or other related information through *Our Family Wizard*, as ordered, despite Petitioner's request for this information.

**Violation 9**

> Respondent has not sent Petitioner notice of [T.R.C.]'s involvement in violin, her lesson schedule, locations, competitions or other related information through *Our Family Wizard*, as ordered, despite Petitioner's request for this information.

As quoted above, the divorce decree requires relator to notify Colen, through Our Family Wizard, of the children's school plays and or other school activities regardless of importance. The motion for enforcement notified relator of the provisions she violated and how she violated those provisions, but did not allege the dates that relator did not give Colen notice of the children's activities. Therefore, the trial court abused its discretion by finding relator in contempt of Violations 5, 6, 7, 8, and 9.

**Violation 10**

> Respondent has named Petitioner on the children's school records as the father of the children, but has not listed Petitioner as an emergency contact for the children and has informed the children's school to list Petitioner on the schools' websites as a "Restrained Individual," which interferes with Petitioner's access to school information and physical visitation on the campuses.

The divorce decree requires that Colen be "named on all school records and medical records [as] the father of the father of the children, and as contact in the case of an emergency." The motion alleged that relator did not list Colen as an emergency contact, but, instead, asked the school to list Colen on the schools' websites as a "Restrained Individual," which interfered with his access to school information and physical visitation on the campuses. The motion for enforcement notified relator of the provision she violated and how she violated it, but did not

16

state the dates Colen was listed as a "Restrained Individual" or the dates relator's violations caused interference with Colen's access to school information and visits with physical visits to the campus. The trial court abused its discretion by finding relator in contempt of Violation 10.

**Violation 15**

> Respondent has failed to notify Petitioner within ten days of the change in e-mail address and cell phone number change for [A.M.C.]. Additionally, Respondent failed to initially notify Petitioner of the children's e-mail address within 10 days of the date of divorce, as ordered.
>
> The divorce decree requires relator to:
>
> a. provide the other conservator with the e-mail addresses and other electronic communication access information for the children within 10 days after the Court signs this order;
>
> b. notify the other conservator of any change in the email addresses or other electronic communication access information not later than twenty-four hours after the date the change takes effect; . . . .

Relators contends that, while there is an order requiring her to notify Colen of changes in email addresses or other electronic communication access information within twenty-four hours of a change taking effect, there is no order providing for the violation of not notifying Colen of such changes within ten days after taking effect. If relator does not provide such information within twenty-four hours of the change taking effect, she still violates the provision if she has not provided the information within ten days of any change. Instead, the problem with the motion for enforcement is that it does not state the date of the violation.

17

Relator further states there is an order providing that each conservator is required to provide the other conservator of the e-mail address for the children "within 10 days after the Court signs this order," but the terms of this order are not the form of the allegation asserted. The divorce decree required relator to provide Colen with the email addresses and other electronic communication access information for the children within ten days of the court's signing the divorce decree, i.e., June 21, 2013. The motion for enforcement notified relator that she had not provided Colen with the children's e-mail address within 10 days of the June 11, 2013 date of divorce, i.e., June 21, 2013. This is sufficient to satisfy due process notice requirements.

The trial court did not abuse its discretion by finding relator in contempt of Violation 15 to the extent the finding relates to relator's failure to provide the children's email address within ten days of the court's signing the divorce decree. The trial court, however, abused its discretion by finding relator in contempt of Violation 15 to the extent the finding relates to relator's failure to notify Colen of changes of email addresses.

## Violation 16

> Respondent failed to communicate with Dr. Barry Ross concerning the reunification plan between Petitioner and [A.M.C.], which has prevented the start of father-daughter sessions between Petitioner and his daughter. Dr. Ross has sent communications stating that Petitioner is ready to move forward with the reunification plan ordered by this Court, and informed Respondent of the same, yet Respondent refuses to make the child available for the first session.

The divorce decree states:

IT IS ORDERED that JON SCOTT COLEN shall seek and maintain weekly therapeutic session with DR. JEREMY SAMUELSON or other psychologist with the focus of treatment to be on anger management and communication style in his capacity for empathy. JON SCOTT COLEN must demonstrate significant improvement before any joint therapy sessions with [A.M.C.] can begin. After it has been demonstrated to Dr. Barry Ross (or another qualified psychologist agreed to b[y] the parties that is in the children's insurance network) that JON SCOTT COLEN has made significant improvement, as stated above, the therapeutic father-daughter sessions shall begin in California with Dr. Barry Ross or another qualified psychologist agreed to b[y] the parties that is in the children's insurance network. Once Dr. Barry Ross (or another qualified psychologist agreed to b[y] the parties that is in the children's insurance network) determines that JON SCOTT COLEN has made significant improvement, he shall contact STACIE LYNN DEPEAU to schedule a session with the child, [A.M.C.], and thereafter conduct father-daughter sessions as he deems appropriate. Once the father-daughter sessions have progressed to the point that the psychologist recommends visitation outside the therapy room, the modified possession order should take effect immediately for [A.M.C.] The Court feels that if improvement is not made within 6 joint sessions, the parties may wish to revisit the issue with the Court.

The divorce decree provides that Dr. Barry Ross shall contact relator to schedule the father-daughter sessions with Colen and A.M.C. as he deems appropriate and thereafter conduct the sessions until he recommends that a modified possession order take effect. The motion for enforcement notified relator that she did not comply with this provision because she failed to communicate with Dr. Ross even though Dr. Ross had sent communications to relator that Colen was ready to move forward with the reunification plan. The motion for enforcement, however, does not state on what date the violation occurred. The trial court abused its discretion by finding relator in contempt of Violation 16.

19

**Violation 17**

Respondent has consistently failed to make [A.M.C.] and [T.R.C.] available for phone communication with Petitioner at the dates and times provided for in the Agreed Final Decree of Divorce. Petitioner has called during these prescribed times to discover that his phone number is blocked or that no one answers the phone. Respondent has also failed to ensure that the child returns Petitioner's calls in a timely matter [sic], if at all. Specifically, Petitioner has been unable to speak with the children on February 8, 2014, November 7, 2013 and October 10, 2013, and unable to speak with A.M.C. on June 29, 2014, July 1, 2014 and July 3, 2014.

The divorce decree provides:

IT IS ORDERED that the conservators shall have electronic communication with the children to supplement their periods of possession as follows:

a. The children may telephone the other parent at any time.

b. The children may e-mail or contact by electronic means other than telephone the other parent at any time.

c. The parent who is with the children shall make the children available by telephone at the prescribed time so that the other parent may talk to the children.

d. If a message is left from the parent who is not with the children, the other parent shall assist the children in returning the call.

e. Reasonable time to call the children at the other parent's home is 7:00 PM each Tuesday, Thursday and Saturday.

The divorce decree specifies the instruction for telephone contact with the children. The motion for enforcement notified relator of the provisions she violated, how she violated those provisions, and the dates she violated them. The

trial court did not abuse its discretion by finding relator in contempt of Violation 17.

## **Violation 18**

> Respondent has failed to facilitate reasonable access for [A.M.C.] and [T.R.C.] to e-mail communications from Petitioner sent to her through *Our Family Wizard*, which is evidenced by the fact that Petitioner's messages have not been opened by the children.

The divorce decree provides that the children "shall have electronic communication with the children to supplement their periods of possession." One means is "[t]he children may e-mail or contact by electronic means other than telephone the other parent at any time." The motion for enforcement notified relator that she has not facilitated the children's access to e-mails from Colen, but does not mention the dates relator violated the divorce decree. The trial court abused its discretion by finding relator in contempt of Violation 18.

## **Violation 19**

> Respondent has failed to provide Petitioner with the children's health insurance policy information, as ordered, and Petitioner is unable to access the provider's website for this information.

The relevant provision of the divorce decree states:

> STACIE LYNN DEPEAU is ORDERED to furnish JON SCOTT COLEN and the Office of the Attorney General Child Support Division a true and correct copy of the health insurance policy or certification and a schedule of benefits within thirty (30) days of the signing of this order. STACIE LYNN DEPEAU is ORDERED to furnish JON COLEN the insurance cards and any other forms necessary for use of the insurance within thirty (30) days of the signing of this order. STACIE LYNN DEPEAU is ORDERED to

provide, within three (3) days of receipt by him, to JON SCOTT COLEN any insurance checks, other payments, or explanations of benefits relating to any medical expenses for the children that JON SCOTT COLEN paid or incurred.

Relator asserts that she is left to guess what the allegations are against her. According to relator, it is not clear whether Colen is complaining of the timing of the release of the information, the manner of communication, or the content of the information provided.

A plain reading of the motion for enforcement establishes that relator was notified that she failed to provide Colen with the children's health insurance policy information within thirty days of the court's signing the order, i.e., by July 11, 2013. There is nothing ambiguous about the allegation. The motion gave relator notice of the provision she violated, how she violated the provision, and the date she violated it. The trial court did not abuse its discretion by finding relator in contempt of Violation 19.

## Violation 20

Respondent has failed to assure privacy of communications for [T.R.C.] when Petitioner calls, as ordered, and records and monitors all phone and *Our Family Wizard* e-mail communications.

The divorce decree provides that each conservator shall, "if necessary equipment is available, accommodate electronic communication with the child with the same privacy, respect, and dignity accorded all other forms of access, at a reasonable time and for a reasonable duration subject to any limitation provided in this order." The motion for enforcement notified relator of the provision of the divorce decree violated and how she violated it, but it does not state the dates of

the violations. The trial court abused its discretion by finding relator in contempt of Violation 20.

**Violation 22**

> Respondent failed to purchase the airline tickets for Petitioner's 2013 summer visitation with [T.R.C.] as ordered, even though Petitioner sent timely written notice of the dates and airport locations to Respondent through *Our Family Wizard*.

The divorce decree states, in relevant part:

> **IT IS FURTHER ORDERED** that STACIE LYNN DEPEAU shall purchase in advance round trip airline tickets (including escort fees) to be used by the child for the child's flight to and from the airport near the residence of JON SCOTT COLEN and STACIE LYNN DEPEAU, for JON SCOTT COLEN's visitation related to the Spring School break, the Summer School break and the Fall School break.

Relator asserts that the relevant language regarding the purchase of airline tickets by relator is not quoted or otherwise referenced in the motion; therefore, she is "left to guess if she is accused of not buying the ticket time[ly], not paying the escort fee, or not providing for an airport close enough to Colen's residence."

The divorce decree was attached to, and incorporated into, the motion for enforcement,[7] and requires relator to purchase T.R.C.'s flight for her summer break visitation with Colen.[8] The motion for enforcement provided relator with notice about her failure to purchase tickets for T.R.C.'s summer visitation with Colen.

---

[7] *See In re Turner*, 177 S.W.3d 284, 289 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding) (motion for enforcement satisfied notice requirements where it referenced the volume and page number in the trial court's minutes in which the decree sought to be enforced could be found).

23

Although the motion alleged the violation was in relation to the summer 2013 visitation, there is no date specified as to when relator did not purchase the tickets. The trial court abused its discretion by finding relator in contempt of Violation 22.

**Violation 23**

> Respondent has made derogatory remarks about Petitioner to the children and has allowed other persons to make derogatory remarks about Petitioner in the presence of the children. Specifically, Respondent has told the children that Petitioner has "threatened to kill family members, including the children." Additionally, the children have access to their schools' websites, where Petitioner is listed as a "Restrained Individual," which is blatantly derogatory towards Petitioner and also derogatory towards his relationship as the children's father.

> Pursuant to the divorce decree, relator and Colen:

> are enjoined from making disparaging remarks about the other party or allowing the children to remain in the presence of third parties making disparaging remarks about the other party or their family.

The motion for enforcement notified relator of the provision violated and that she violated that provision by (1) telling the children that Colen had "threatened to kill family members, including children"; and (2) allowing the children to remain in the presence of third parties making disparaging remarks because the schools' websites list Colen as a "Restrained Individual." However, the motion for enforcement does not mention what dates these violations occurred. The trial court abused its discretion by finding relator in contempt of Violation 23.

**Violation 24**

> Respondent failed to send Petitioner notice of [T.R.C.]'s involvement in Simutown, a week-long project which took place in June 2014, through *Our Family Wizard*, as ordered.

The divorce decree requires relator to give Colen notice of the precise dates, days, and times of school activities via Our Family Wizard. The motion for enforcement specifically notified relator of her failure to give Colen notice T.R.C.'s involvement in the Simutown project in June 2014. The June 2014 date of the specifically named project is sufficient to satisfy notice of when the violation occurred. The trial court did not abuse its discretion by finding relator in contempt of Violation 24.

**Violation 26**

> Respondent failed to send Petitioner notice of [A.M.C.]'s Promotion Ceremony, which was on June 25, 2014, through *Our Family Wizard*, as ordered.

Relator asserts, assuming that this was a school promotion ceremony and not an extracurricular event, there is arguably an order that would include the requirement for relator to list the information on Our Family Wizard. Relator, nonetheless, claims that she "is left to guess whether she is required to simply post the School Schedule as it is provided by the school—for the entire school." Relator also poses a number of scenarios:

> [I]s she to provide the school schedule for the child only expressing her classes and school activities for which the child is eligible or will participate? Is she to provide a listing of each event involving either or both the school as a whole and the child? Is relator required to provide a list of all events involving a potential new parking lot to

avoid contempt under the provisions of ". . . other school activities regardless of importance"?

The divorce decree unambiguously requires relator to give notice Colen of the precise dates, days, and times of the Official School Schedule and school activities via Our Family Wizard. The motion for enforcement alleges relator failed to provide notice of the promotion ceremony on June 25, 2014. Relator has concocted ambiguities that do not exist in the order. The divorce decree provides notice of relator's duties and the motion for enforcement notifies relator of the provision relator violated, how she violated it, and the date of the violation. The trial court did not abuse its discretion by finding relator in contempt of Violation 26.

**Violation 29**

> Respondent failed to send Petitioner notice of meetings with [sic] [A.M.C.]'s participation in water polo and cheerleading, as well as her schedule, changes in that schedule, the names of her coaches and dates of competitions through *Our Family Wizard* as ordered.

The divorce decree requires relator to notify Colen of the dates, days, and times of school activities. The motion for enforcement notified relator of the provision she violated and how she violated it, but does not state the date on which any violation occurred. The trial court abused its discretion by finding relator in contempt of Violation 29.

### C. Conclusion

We conclude that the trial court did not abuse its discretion by finding relator in contempt of Violations 1, 2, 3 (to the extent the finding applies to relator's failure to notify Colen of the parent-teacher conference), 15 (to the extent the

26

finding applies to relator's failure to provide the children's email addresses with in ten days of the court's signing the divorce decree), 17, 19, 24, and 26. On the other hand, we conclude that the trial court abused its discretion by finding relator in contempt of Violations 3 (to the extent it applies to the children's field trips), 5, 6, 7, 8, 9, 10, 15 (to the extent it applies to relator's failure to notify Colen of changes of email addresses), 16, 18, 20, 22, 23, and 29.

Because the trial court assessed a separate punishment for each violation, the entire order is not void. Those contempt findings that are void may be stricken from the record, while the valid findings remain intact in the order. *See Hall*, 433 S.W.3d at 207; *Davis*, 305 S.W.3d at 330. We sustain relator's second issue, in part, and overrule it, in part.

### V. SUFFICIENCY OF THE LANGUAGE DIRECTING THE SHERIFF TO TAKE CUSTODY OF RELATOR

In her reply, relator raises a third issue, complaining that the "Enforcement Order" does not contain sufficient commitment language directing the Sheriff to take relator into custody and execute the sentence. "A commitment order is the warrant process or order by which a court directs a ministerial officer to take custody of a person." *Ex parte Hernandez*, 827 S.W.2d 858, 858 (Tex. 1992) (orig. proceeding) (per curiam). Even when there is a signed written judgment or order of contempt, "a written order of commitment delivered to the sheriff or other appropriate officer is necessary to legally imprison a person." *Ex parte Barnett*, 600 S.W.2d 252, 256 (Tex. 1980) (orig. proceeding). There is no particular form prescribed by law for an order of commitment. *Id.* It may be a separate order issued by the court, an attachment or order issued by the clerk at the court's direction, or included in the contempt judgment. *Hernandez*, 827 S.W.2d at 858.

27

The commitment section of the "Enforcement Order" states:

> IT IS FURTHER ORDERED that the commitment of STACIE LYNN DEPEAU shall begin on August 22, 2014 at 9 00 a m , [sic] and Stacie Lynn Depeau is ORDERED to appear before the 245th Judicial District Court at that time ***to be placed in the custody of the Harris County Sheriff's Department and placed in the Harris County Jail for fifteen days, and there safely kept*** to serve 15 days of the sentence pronounced by this Court. The remaining 165 days is [sic] probated pursuant to the terms set forth in this order as stated in Section 8 below.[9]

This language is sufficient to direct the Sheriff to take custody of relator. *See In re Hall*, 433 S.W.3d at 210 (holding language ordering the relator to "be confined in the County Jail of Harris County, Texas, for a period of 180 days for each of the . . . counts of contempt and, as civil contempt, day to day thereafter to be detained by the Sheriff of Harris County, Texas" was sufficient to direct the sheriff to take custody of the relator).[10]

---

[9] Emphasis added.

[10] In *In re Walling*, this court held the following language, "Let, therefore, commitment issue to the Sheriff of Harris County, Texas accompanied by a signed copy of this order," was not sufficient to constitute a commitment order because it did not actually direct anyone to take the relator into custody. No. 14-03-00558-CV, 2003 WL 21543538, at *1 (Tex. App.—Houston [14th Dist.] July 10, 2003, orig. proceeding) (mem. op.); *see also In re Zapata,* 129 S.W.3d 775, 780 (Tex. App.—Fort Worth 2004, orig. proceeding) (holding that the following language, "IT IS THEREFORE ORDERED that [Relator] is committed to the county jail of Tarrant County, Texas, for a period of 180 days for each separate violation enumerated above," was insufficient to constitute a valid commitment order); *Ex parte Ustick,* 9 S.W.3d 922, 924–25 (Tex. App.—Waco 2000, orig. proceeding) (holding that the following language, "The Court ORDERS [RELATOR] committed to the county jail for 180 days for each separate act of contempt, said commitments to run concurrently," and "The Court FINDS that Obligor ... can pay the amount listed below and ORDERS *him* committed to the county jail until *he* pays $1000.00 in child support arrearages," was insufficient to constitute a valid commitment order).

28

Relator does not challenge the commitment language contained in the "Order Holding Respondent in Contempt for Separate Violations of the Decree Signed on June 11, 2013 and for Commitment." The commitment language in that order states:

> It is, therefore, ORDERED that *the Sheriff of Harris County, Texas, take into custody and commit to the jail of Harris County, Texas, Respondent,* STACIE LYNN DEPEAU, who is to be confined in the county jail of Harris County, Texas in accordance with this contempt order for 15 days. The remaining 165 days is [sic] probated pursuant to the terms set forth in the Enforcement Order in Section 8.

This language is sufficient to constitute a valid commitment order because it directs the sheriff to take relator into custody. *See In re Radmacher*, No. 14-08-00346-CV, 2008 WL 226 1278, at *3 (Tex. App.—Houston [14th Dist.] May 23, 2008, orig. proceeding) (mem. op.) (holding that language specifically instructing the sheriff to "take into custody and commit to the jail of Harris County, Texas" was sufficient to satisfy *Hernandez*). A commitment order may be in a separate order from the contempt judgment. Here, this commitment order refers to the "Enforcement Order." We overrule relator's third issue.

## VI. CONCLUSION

We conclude that the contempt order was signed sufficiently close in time to the trial court's pronouncement of relator's contempt and commitment, and the language of the commitment order is sufficient to direct the sheriff to take relator into custody. However, we further conclude that the trial court's contempt findings as to Violations 3 (to the extent it applies to the children's field trips), 5, 6, 7, 8, 9, 10, 15 (to the extent it applies to relator's failure to notify Colen of changes

29

of email addresses), 16, 18, 20, 22, 23, and 29 are void, and direct the trial court to strike those findings. The remainder of the contempt findings is valid. Accordingly, we conditionally grant the petition for mandamus, in part, and deny it, in part. We are confident that the trial court will act in accordance with this opinion. The writ will issue only if the trial court fails to do so.

PER CURIAM

Panel Consists of Justices McCally, Brown, and Wise.